UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT A. BARRON,

       Plaintiff,

     v.                           Case No. 05-C-217

R & K SUPPORT SERVICES, LLC and
ROSIE KRUEGER,

       Defendants.

**DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. PROCEDURAL AND FACTUAL BACKGROUND

This action was commenced on February 24, 2005, when the pro se plaintiff, Robert A. Barron ("Barron") filed a complaint against defendants R & K Support Services, LLC ("R & K") and Rosie Krueger ("Krueger") alleging that he was discriminated against on the basis of his gender in violation of Title VII. More precisely, Barron alleges that he was demoted and ultimately constructively discharged on the basis of his sex.

On June 1, 2005, a Rule 16 Scheduling Conference was conducted with the plaintiff and counsel for the defendants. In order to afford the plaintiff an opportunity to find and retain a lawyer to represent him, the court ordered that the parties' Fed. R. Civ. P. Rule 26(a) initial disclosures be made on or before August 1, 2005, and that no discovery be taken before August 1, 2005. The court also ordered that all discovery be completed on or before November 1, 2005 and that all dispositive motions, including motions for summary judgment, be filed no later that November 14, 2005.

On November 3, 2005, the defendants filed a motion for summary judgment. Accompanying their motion were, *inter alia*, a brief and a set of proposed findings of fact, in accordance with Civil Local Rule 56.2(a). The plaintiff has not filed any response to the defendants' submissions, and the time for filing such response has come and gone. *See* Civil L.R. 56.2(b). Accordingly, pursuant to Civil L.R. 56.2(e), the court concludes that there is no genuine material issue as to any of the defendants' proposed findings of fact. Those findings of fact are as follows.

The plaintiff, Robert A. Barron, resides at 4410 West Roosevelt Drive, Milwaukee, Wisconsin, 53216. (Defendants' Proposed Findings of Fact ("DPFOF") ¶ 1.)

Defendant R & K Support Services, LLC, is a Wisconsin limited liability company, and is in good standing to do business in the State of Wisconsin and is located at 4818 South 76th Street, Greenfield, Wisconsin, 53220. (DPFOF ¶ 2.)

Defendant Rosie Krueger is the owner and Managing Member of defendant R & K Support Services, LLC. (DPFOF ¶ 3.)

The United States District Court for the Eastern District of Wisconsin has federal question jurisdiction over this action as plaintiff's claims are predicated on Title VII of the Civil Rights Act of 1964, codified in 42 U.S.C. § 2000e-2(a) (2000). (DPFOF ¶ 4.)

Plaintiff was hired by the defendant on January 16, 2003 to be an in home caregiver to the clients of the defendant. (DPFOF ¶ 5.)

Plaintiff was initially hired to a "floater" position with no guaranteed hours or schedule at a pay rate of $8.75 per hour. (DPFOF ¶ 6.)

On July 17, 2003, plaintiff was promoted to a supervisory position of "Home Coordinator" for the apartment program of defendant's quadriplegic client, Timothy Whalen. (DPFOF ¶ 7.)

2

Plaintiff's promotion included a first-shift schedule with twenty-one and one-half (21.5) hours per week, and a pay raise from $8.75 per hour to $10.00 per hour. (DPFOF ¶ 8.)

On August 5, 2003, plaintiff's hours increased to thirty-five (35) hours per week. (DPFOF ¶ 9.)

Plaintiff continued in his position until on or about August 18, 2003, when he was removed from the position. (DPFOF ¶ 10.)

Plaintiff was removed from his Home Coordinator position after Mr. Whalen, through his Milwaukee County Case Manager, Mr. Jerome Nowak, requested plaintiff's removal. (DPFOF ¶ 11.)

The defendant attempted to find other suitable employment alternatives within the company for the plaintiff, and offered to the plaintiff three (3) different positions which the plaintiff declined. (DPFOF ¶ 12.)

The plaintiff requested a return to the "floater" position with no guaranteed hours and a pay rate of $8.75 per hour, and the defendant complied with the request. (DPFOF ¶ 13.)

The plaintiff voluntarily resigned from the defendant's employ by giving the defendant a resignation letter dated November 10, 2003. (DPFOF ¶ 14.)

The plaintiff's resignation from employment with the defendant was freely and voluntarily given without the request or any other action being taken by the defendant. (DPFOF ¶ 15.)

Throughout the time giving rise to this controversy, defendant Rosie Krueger acted within the scope of her employment as the owner and manager of defendant R & K Support Services, LLC. (DPFOF ¶ 16.)

3

Additional relevant facts (as supported by the written submissions of the defendants) will be referenced in the "Discussion" section of this decision.

## II. SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (quoting advisory committee's note to 1963 amendment of Fed. R. Civ. P. 56(e)). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present

4

definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson*, 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts." *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (internal quotations omitted). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. DISCUSSION

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail at the summary judgment stage on his sex

5

discrimination claim under Title VII, Barron must demonstrate R & K's[1] discriminatory intent under either the "direct" method or the "indirect" method of proof.

A plaintiff proceeding under the "direct method may rely on two types of evidence: direct evidence or circumstantial evidence." *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720 (7th Cir. 2005). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Eiland v. Trinity Hosp.*, 150 F.3d 747, 751 (7th Cir. 1998) (internal quotations omitted). Direct evidence is evidence that may "'be interpreted as an acknowledgment of discriminatory intent by the defendant.'" *Rudin*, 420 F.3d at 720 (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). Simply stated, "[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.' " *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir.2000)). Admittedly, direct evidence establishing an employer's discriminatory intent is rare.

A plaintiff may also prevail under the direct method by establishing a "convincing mosaic" of circumstantial evidence that "allows a jury to *infer* intentional discrimination by the decision-maker." *Id.* (emphasis added). Circumstantial evidence "may come in the form of 'suspicious timing, ambiguous statements oral or written, [or] behavior toward or comments directed at other employees in the protected group.'" *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 272 (7th Cir. 2004) (quoting *Troupe*, 20 F.3d at 736). The circumstantial evidence, however, "must point

---

[1] For the reasons set forth below, Rosie Krueger is not a proper defendant in a Title VII case such as this. Accordingly, she will be dismissed as a defendant.

Case 2:05-cv-00217-WEC   Filed 01/30/06   Page 6 of 12   Document 26

directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

A plaintiff proceeding under the indirect method, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), must generally show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of a protected class. *See Ineichen v. Ameritech*, 410 F.3d 956, 959 (7th Cir. 2005). "The failure to establish any one of the initial four elements [of a prima facie case] defeats a discrimination claim." *Bio v. Federal Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005).

If the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the decision. *McDonnell Douglas*, 411 U.S. at 802. Then, if the defendant articulates a legitimate, nondiscriminatory reason, the burden of production shifts back to the plaintiff to show that the defendant's explanation was pretextual. *Ineichen*, 410 F.3d at 961. To demonstrate pretext, Barron must show that R & K's articulated reason for demoting him either: "(1) had no basis in fact; (2) did not actually motivate [his demotion]; or (3) was insufficient to motivate [his demotion]." *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002). Pretext requires more than a showing that the decision was "mistaken, ill considered or foolish . . . so long as [the employer] honestly believes [in the reason presented], pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). "Pretext is 'a dishonest explanation, a lie rather than an oddity or an error.'" *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (quoting *Kulumani v. Blue Cross Blue Shield Ass'n*,

7

224 F.3d 681, 685 (7th Cir.2000)). Simply put, "pretext means deceit used to cover one's tracks." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir.2001) (internal quotations omitted).

It is also worth noting that, although the burden of production shifts under the *McDonnell Douglas* test, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Of course, Barron is a male claiming that he was discriminated against on the basis of his sex. Thus, he is asserting a "reverse discrimination" claim. Such being the case, not all of the traditional elements of the prima facie case are to be applied in his case. Under the first prong of a prima facie case in a reverse discrimination claim, a male plaintiff must show "that there are 'background circumstances that demonstrate a particular employer has reason or inclination to discriminate invidiously against [men] or [produce] evidence [showing] that there is something "fishy" about the facts at hand.'" *Katerinos v. U.S. Dep't of Treasury*, 368 F.3d 733, 736 (7th Cir. 2004) (quoting *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003)). [2]

Turning to the facts of this case, Barron has not produced any evidence that could "be interpreted as an acknowledgment of discriminatory intent by [R & K]," and therefore, has not produced any direct evidence of intentional discrimination. *Troupe*, 20 F.3d at 736. Indeed, as

---

[2] Moreover, if a male plaintiff "fails to make a prima facie case under the modified test, he can demonstrate illegal discrimination by any other 'indirect evidence sufficient to support a reasonable probability . . . that but for [his] status [as a white male] the challenged employment decision' would not have occurred." *Mills v. Health Care Service Corp.*, 171 F.3d 450, 456 (7th Cir. 1999) (quoting *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366,1369 (10th Cir. 1997)).

already noted, Barron has not filed any response whatsoever to the defendants' motion for summary judgment and the accompanying written submissions.

Furthermore, even assuming that Barron would elect to proceed under the indirect method of proof, his claim of sex discrimination would still fail. To be sure, he was arguably demoted from the position of Home Coordinator back to the position of floater. But, Barron has not produced any evidence showing "that there are 'background circumstances that demonstrate [R & K] has reason or inclination to discriminate invidiously against [men] or . . . that there is something "fishy" about the facts at hand.'" *Katerinos,* 368 Fed.3d at 736. Nor has he produced any evidence demonstrating that he was treated less favorably than similarly situated females, i.e., female Home Coordinators about whom there were made complaints like that which, as described below, was made about Barron. Finally, Barron has not produced any evidence that he was meeting his employer's legitimate performance expectations at the time he was "demoted."

Indeed, as to the "performance" prong of the prima facie test, the uncontradicted submissions of the defendants demonstrate that Barron was not meeting his employer's legitimate performance expectations. More precisely, Barron was removed as the Home Coordinator for one of R & K's clients, Mr. Whalen, at the request of Mr. Whalen's Milwaukee County Case Manager, Mr. Jerome Nowak.

> Plaintiff was removed from his position after the client he was working with complained about Plaintiff's conduct to his Milwaukee County Case Manager and the client requested Plaintiff be removed immediately. (Ans. p. 3). The client, Mr. Whalen, is a quadriplegic who requires constant in-home health care. (Moodie Aff., Ex. 1000, p. 7). Mr. Whalen stated that he felt Plaintiff was abusive and that he did not feel safe around him. *Id.* Mr. Whalen also complained that Plaintiff would withhold food and cigarettes from him, and Plaintiff would habitually arrive late for his shift and/or leave early. *Id*. at Ex. 1000, p. 5-7. After consulting with Mr. Whalen and his Case Manager, Ms. Rosie Krueger and Ms. Erica Andres of

9

Defendant Company believed it was in the best interests of Mr. Whalen to remove Plaintiff from his caregiver position. *Id*. at Ex. 1000, p. 7. The Defendants are in the business of assisting individuals with their home healthcare needs, and must put the needs of the client above the desires of employees. Upon finding that Mr. Whalen had several legitimate reasons for requesting Plaintiff's removal, the Defendants complied with the demand of their client.

(Defs.' Br. at 9.)

Of course, this court need not (and does not) make a finding that Barron was in any fashion abusive to Mr. Whalen. It is enough to say that Barron has not produced any evidence to create an issue of fact on the question of whether he was, at the time of his "demotion," meeting his employer's legitimate performance expectations. Thus, he has failed to make out a prima facie case of discrimination. For that reason alone, his claim and this action are subject to dismissal.

However, even if the court were to assume Barron had made out a prima facie case, this action would nevertheless be subject to dismissal because Barron has not produced any evidence to show that the defendants' stated reason for demoting him (which on its face is certainly nondiscriminatory) was pretextual, i.e., "'a dishonest explanation." *Ballance,* 424 F.3d at 617.

Furthermore, Barron alleges that he was constructively discharged. But that claim must also fail. "To establish a claim for constructive discharge under Title VII, a plaintiff must prove that his working conditions were so intolerable as a result of unlawful discrimination that a reasonable person would be forced into involuntary resignation." *Tutman v. WBBM-TV, Inc./CBS, Inc*., 209 F.3d 1044, 1050 (7th Cir. 2000). In *Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003), the Seventh Circuit Court of Appeals had occasion to set forth the standards for a constructive discharge claim:

> A constructive discharge occurs when an employee resigns his or her current position because the employee considers the conditions intolerable and a reasonable employee also would have found the conditions made remaining in the job unbearable. *See Lindale v. Tokheim Corp*., 145 F.3d 953, 955 (7th Cir. 1998). We have stated that the

10

"[w]orking conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because 'in the "ordinary" case, an employee is expected to remain employed while seeking redress.'" *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000) (quoting *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998)), *cert. denied*, 531 U.S. 1078 (2001); *see Mosher*, 240 F.3d at 667 ("Absent extraordinary conditions, 'a complaining employee is expected to remain on the job while seeking redress.'" (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997))); *Lindale*, 145 F.3d at 956 ("[T]he employee would have to show why he had to quit immediately, before he found the other job; why, in other words, his duty to mitigate damages did not require him to remain.").

*Id.* at 336. Simply stated, Barron has not produced any evidence to demonstrate that his working conditions were so intolerable that he had to quit his employment at R & K.

Finally, to the extent that Barron has asserted a Title VII claim against Rosie Krueger, that claim must be dismissed. The undisputed evidence demonstrates that Rosie Krueger is the owner and Managing Member of defendant R & K. It is also undisputed that R & K, not Rosie Krueger, was Barron's employer. And, it is well settled that Title VII does not impose personal liability on supervisors. Rather, Title VII liability can only be imposed on an employee's employer. *See Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995).

As previously stated, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In the end, when a plaintiff such as Barron is faced with a motion for summary judgment he cannot just sit back and present nothing in response to such motion. Instead, it is incumbent on him to present sufficient evidence to demonstrate that there is a material issue of fact for a jury to decide. Barron has failed

11

to do so. Consequently, and for all of the foregoing reasons, the defendants' motion for summary judgment will be granted.

   **NOW THEREFORE IT IS ORDERED** that the defendants' motion for summary judgment be and hereby is **GRANTED**;

   **IT IS FURTHER ORDERED** that this action by and hereby is **DISMISSED**;

   **IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

   **SO ORDERED** this _30th_ day of January 2006, at Milwaukee, Wisconsin.


                                        /s/ William E. Callahan, Jr.
                                        WILLIAM E. CALLAHAN, JR.
                                        United States Magistrate Judge

12